UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **RITA GENTILE** | * | **CIVIL ACTION NO. 24-1607** |
| | * | |
| **Plaintiff** | * | |
| | * | **JUDGE:** |
| *Versus* | * | |
| | * | **MAGISTRATE:** |
| **NEW ORLEANS CITY PARK** | * | |
| **IMPROVEMENT ASSN., SUSAN HUTSON** | * | |
| **as ORLEANS PARISH SHERIFF,** | * | |
| **LATOYA CANTRELL as THE MAYOR OF** | * | |
| **THE CITY OF NEW ORLEANS,** | * | |
| **ANNE KIRKPATRICK as CHIEF OF THE** | * | |
| **NEW ORLEANS POLICE DEPARTMENT** | * | |
| **and DWIGHT McKENNA** | * | |
| **as ORLEANS PARISH CORONER** | * | |
| | * | |
| **Defendants** | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## COMPLAINT FOR DAMAGES

The complaint of Rita Gentile, a person of the full age of majority and domiciled in the County of Columbia, State of New York, respectfully represents the following:

### STATEMENT OF JURISDICTION

Jurisdiction of this Court is founded on diversity of citizenship and amount under 28 U.S.C. § 1332(a) as well as Federal Question under 42 U.S.C. § 1983. The plaintiff and defendants are domiciled in different states, and the matter in controversy exceeds $75,000.00 because plaintiff's damages exceed this amount.

### STATEMENT OF VENUE

Venue is proper in this district pursuant to 28 U.S.C. § 1391(a)(2). As will be further discussed herein below, the events giving rise to this action all occurred in Orleans Parish, Louisiana, within the Eastern Judicial District of Louisiana.

1

1.

Made defendant herein is the New Orleans City Park Improvement Association, which is a non-profit corporation that administers City Park, including the City Park Police Department.

2.

Made defendant herein is Susan Hutson in her capacity as Sheriff for the Parish of Orleans, who at all times pertinent hereto was responsible for the operation of Orleans Parish Prison.

3.

Made Defendant herein is LaToya Cantrell in her capacity as the Mayor of the City of New Orleans which is a municipality organized under the laws of the State of Louisiana which manages, directs and controls the New Orleans Police Department ("NOPD") for which Anne Kirkpatrick is named in her capacity as the Chief of the NOPD.

4.

Made defendant herein is Dr. Dwight McKenna in his capacity as Coroner for the Parish of Orleans.

5.

Dante Gentile was twenty-six years old at the time of the events that give rise to this lawsuit, including his untimely death. Dante died with no spouse and no children, and his mother Rita Gentile is the proper party to bring this action.

6.

Dante was an artist and musician, and he had moved from his home in Catskill, New York to New Orleans from approximately 2014-2017. He visited New Orleans again twice in 2022, and then in June of 2023.

7.

As will be set forth herein, it is obvious that during the period between June 23, 2023 and July 1, 2023, Dante was in the midst of an acute psychological breakdown, which apparently resulted in his avoidable suicide. Because there was really no investigation into Dante's death by the NOPD, Rita Gentile must accept that Dante committed suicide based on the events surrounding his untimely death.

8.

On June 23, 2023, Dante was arrested by the City Park Police Department (CPPD). A report was called in to CPPD by a City Park employee that a male was acting suspicious and looked to be under the influence of alcohol or narcotics. Shortly thereafter, Dante took the City Park train and went for a ride.

9.

Dante was arrested by CPPD without incident, but no assessment of his mental condition appears in the arrest report, and none of the descriptions relative to his condition were filled out by the arresting officers. Dante was carrying photo identification at the time of his arrest. The CPPD officers transported Dante to Orleans Parish Central Lockup where he was booked and processed without further incident.

10.

Dante was confined to Orleans Parish Prison on June 23 and 24 of 2023. During this confinement, it was noted in the medical records that it was "urgent" that Dante see a mental health professional. However, the records also indicate that the deputies acting as jail security would not allow Dante to be evaluated, at least in part because he was being "fast tracked" for release. Several requests for Dante to see a MHP 9mental healthcare provider) were denied on both the 23rd and the

24th.

11.

Inexplicably, despite Dante's urgent need to see a mental health professional, The Orleans Sheriff released him from OPP with no instructions for mental health care on June 24, 2023.

12.

The following day, June 25, 2023, Dante was back in City Park. This time, in the middle of the afternoon, Dante walked into the Café du Monde totally nude and in obvious psychological distress. Workers at Café du Monde shielded Dante from the view of patrons.

13.

Having just been arrested by CPPD two days earlier and despite being in an obvious psychological crisis, the CPPD arrested Dante again. And instead of taking him to get the mental health treatment he so badly needed, they once again took him to OPP where he was booked and processed back into jail. It appears that no CPPD arrest report exists relative to this arrest.

14.

It was reported by a medical professional at OPP on June 26, 2023 that Dante was not able to cooperate with an interview due to his mental status. Dante was taken to court, and when he returned to OPP from court, the judge sent instructions to assess Dante and to place him on suicide watch. Apparently, Dante had told the judge, "Voices are telling me to kill myself and voices are telling me to calm down."

15.

This prompted a psychiatric evaluation of Dante that occurred on June 27, 2023. During this evaluation, it became clear to the psychiatrist that Dante was hearing voices in his head, and the psychiatrist diagnosed Dante as having an "unspecified psychosis not due to a substance or known

4

physiological condition." Consequently, the psychiatrist prescribed Zyprexa, a powerful anti-psychotic medication. The psychiatrist further noted that Dante was on suicide watch.

16.

Dante was scheduled for a follow-up visit with the psychiatrist on June 29, 2023, but when the mental health professional went to see Dante, he had been taken to court. A mental healthcare provider clearly noted Dante's medical orders as follows:

- Continue sw(suicide watch)/smock
- MD f/u tomorrow – 6/3-/23
- MHP to see pt when he returns unity(sp) today
- Route pt to UMC ER for evaluation at time of release due to pt on sw if pt released prior to f/u apt.

17.

Inexplicably, despite being on suicide watch, wearing a suicide smock, having been recently put on a powerful anti-psychotic medication, and with orders to release Dante to the University Medical Center Emergency Room; the Orleans Sheriff released him from OPP with no instructions for mental health care on June 30, 2023.

18.

Based on information and belief, Dante spent much of the day on Friday, June 30, 2023 frantically trying to get his truck out of a tow yard. He did not have enough money to do so.

19.

At 8:30 p.m. on June 30, 2023, a motorist called 911 to report a male standing on the on-ramp of the N. Claiborne Overpass near St. Philip Street with his hands together praying as if he wanted to jump. That person was Dante Gentile.

20.

Ten New Orleans Police Department (NOPD) officers showed up on or near the bridge, but none appears to have been a "Crisis Intervention Team" officer. Dante had threatened to jump from the bridge if they came any closer. One officer communicating with Dante tried to coax Dante off of the bridge by inducing him with "a drink" and "a piece of ass."

21.

None of the NOPD officers ascertained Dante's identity, or that he had been in a full-blown, suicidal psychosis for the previous week, that he had been arrested twice, or that he had been released from OPP on suicide watch. They simply made no effort, which is even worse because he had told them that he intended to jump from the bridge.

22.

After about twenty-five minutes, Dante walked down the bridge with a few officers. Once he got to the bottom of the overpass, NOPD simply let Dante go into the night alone. In doing so and based on the other things they had done in dealing with Dante, these officers violated New Orleans Police Department Operations Manual, Chapter 41.5 entitled "Crisis Intervention." The NOPD officers made no attempt to determine if Dante would be going somewhere safe.

23.

Upon information and belief, Dante walked to the Falstaff apartment building on Gravier Street across from NOPD Headquarters. He gained access to the roof of the building, and he jumped several floors to his death. Upon information and belief, Dante jumped right before or right after midnight on June 30, 2023.

24.

At around 8:30 p.m. on July 1, 2023, NOPD officers were dispatched to the Falstaff building when a resident of the Falstaff apartment complex called to report an unknown white male unresponsive lying face down in the grass right across from her apartment window.

25.

At least three NOPD officers who were present on the Claiborne Overpass the night before also were present at the Falstaff building on July 1, 2023. Stunningly, the NOPD report about the discovery of Dante's body, which was written by one of the very officers present on the bridge the night before, makes no mention of the bridge incident at all.

26.

Without any apparent further investigation, such as gathering surveillance video, the NOPD designated Dante's death as "unclassified." Also, despite the fact that Dante had been twice arrested that week and had credit cards on his person with his name on them; the NOPD designated Dante as an "unknown victim."

27.

Upon information and belief, the FBI receives notice of all "unclassified" deaths in New Orleans. An FBI Supervisor noticed verbal comments on review of one of the officers' body-cam videos, which indicated that the NOPD officer recognized Dante from the bridge the night before. Realizing that there was no mention of the bridge incident in the report, the FBI Supervisor prompted an internal investigation by NOPD into this incident. The results of this investigation are unknown to Rita Gentile.

28.

On the night of July 1, 2023, the Orleans Parish Coroner's Office took possession of Dante

Gentile's remains.  The horrific events continued.

29.

Around the time the Coroner took possession of Dante's remains, the Coroner's office had a refrigeration unit that was not working, so Dante's body began to decompose at an accelerated rate.

30.

For two and a half long months, the Coroner held Dante's remains without making any real attempt to locate his next of kin.  The Coroner's office finally made its first attempt to contact next of kin on September 15, 2023, and contacted Dante's grandmother and was then routed to Dante's aunt, Lori Gentile, who then informed a frantic Rita Gentile that same day that her son was deceased.

31.

Dante's remains were so badly decomposed that Rita was not permitted to view the body of her only son before he was cremated.

32.

The conduct of the Coroner's Office in failing to properly identify Dante Gentile when it had access to both his fingerprints and his name is not only grossly negligent, but also extreme, reckless, and outrageous - - as is the failure to properly refrigerate Dante's body.

**CAUSES OF ACTION**

**COUNT ONE**

**42 U.S.C. § 1983 – Violation of Fourteenth
And Eighth Amendment Rights – City Park Police Department, Orleans Parish Sheriff
(Hutson), and NOPD (Cantrell and Kirkpatrick)**

33.

All previous paragraphs are incorporated herein by reference as if set forth fully here.

34.

Defendants City Park Police Department, the Orleans Parish Sheriff, and the NOPD were grossly negligent, reckless, and deliberately indifferent in managing, training, and supervising their subordinates who interacted with Mr. Gentile.

35.

These actions caused the death of Mr. Gentile, which were caused by Defendants' conscious and voluntary acts and deliberate indifference.  These actions resulted in the wrongful death and survival action asserted herein.

36.

Defendants acted under pretense and color of state law in their individual capacities and within the scope of their respective employment.  Defendants' actions were beyond the scope of their jurisdiction, authority, and power, and were done willfully, knowingly, and with the specific intent to deprive Plaintiff of his constitutional rights secured by 42 U.S.C. § 1983 and the Eighth and Fourteenth Amendment of the United States Constitution.

## COUNT TWO

### Negligent and Intentional Infliction of Emotional Distress – All Defendants

37.

All previous paragraphs are incorporated herein by reference as if set forth fully here.

38.

Defendants' (City Park Police Department, Orleans Parish Sheriff, and NOPD) practices, procedures, and policies were a proximate cause of the negligent and intentional infliction of emotional distress upon Dante Gentile.

39.

Defendant, Dr. Dwight McKenna's practices, procedures, and policies were a proximate cause of additional negligent and intentional infliction of emotional distress upon Rita Gentile.

**COUNT THREE**
**42 U.S.C. § 1983 – Violation of Fourteenth Amendment Rights –**
**City Park Police Department, Orleans Parish Sheriff (Hutson), and NOPD (Cantrell and Kirkpatrick)**
**for Failure to Provide Adequate Medical Care**

40.

All previous paragraphs are incorporated herein by reference as if set forth fully here.

41.

Through the conduct described above, Defendants negligently, recklessly, and unlawfully with deliberate indifference deprived Dante Gentile of his right to adequate medical care, which is guaranteed by the Fourteenth Amendment of the United States Constitution.

42.

These three Defendants, in failing to enact or enforce policies and procedures to ensure that arrestees received adequate medical care, violated Mr. Gentile's Fourteenth Amendment right to adequate medical care.

43.

These three Defendants failed to enact policies and procedures to ensure that their employees would adequately respond to medical needs and diagnose and treat arrestees.

44.

These actions caused the death of Mr. Gentile, which were caused by Defendants' conscious and voluntary acts and deliberate indifference. These actions resulted in the wrongful death and survival action asserted herein.

45.

These three Defendants failed to enact policies and procedures to ensure the proper release of inmates from suicide watch, including but not limited to: (a) failing to develop meaningful criteria to determine whether it was safe to arrest or release an inmate showing obvious signs of psychiatric issues; (b) failing to train staff, employees, and/or contractors how to properly recognize psychiatric issues, including suicide risk; (c) failing to hire qualified, credentialed staff, employees, and/or contractors; and/or (d) allowing unqualified staff, employees, and/or contractors to determine who no longer posed a suicide risk.

46.

Plaintiff specifically is not proceeding under the Louisiana Medical Malpractice Act.

47.

Plaintiff specifically claims punitive damages, emanating from 42 U.S.C. § 1983 *et seq.* against Defendants City Park Police Department, the Orleans Parish Sheriff, and the NOPD.

48.

Plaintiff specifically requests reasonable attorney's fees and reimbursement for costs incurred in the prosecution of this claim in accordance with 42 USC § 1988 against Defendants City Park Police Department, the Orleans Parish Sheriff, and the NOPD.

**WHEREFORE**, plaintiff prays that all defendants be served with a copy of this Complaint and be cited to appear and answer same and that after due proceedings are had there be judgment in favor of your plaintiff, Rita Gentile, and against the herein named defendants in an amount sufficient to compensate plaintiff for the damages sustained, together with legal interest thereon from the date of judicial demand, for all costs of these proceedings, punitive damages, attorney's fees, and for all general and equitable relief.

RESPECTFULLY SUBMITTED,

*Richard C. Trahant*
RICHARD C. TRAHANT (#22653) T.A.
ATTORNEY AT LAW
2908 Hessmer Ave.
Metairie, Louisiana 70002
Tel:(504) 780-9891
Fax:(504) 780-7741
trahant@trahantlawoffice.com

-AND-

SOREN E. GISLESON La Bar No. 26302
HERMAN, HERMAN & KATZ
909 Poydras Street, Suite 1860
New Orleans, La 70113
Tel: (504) 581-4892
Fax: (504) 561-6024
sgisleson@hhklawfirm.com