UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| RITA GENTILE | CIVIL ACTION |
| VERSUS | NO. 24-1607 |
| NEW ORLEANS CITY PARK IMPROVEMENT ASSOCIATION, ET AL. | SECTION "A" (4) |

### ORDER AND REASONS

Before the Court is a second **Motion to Dismiss for Failure to State a Claim (Rec. Doc. 50)** filed by Defendant Dwight L. McKenna, M.D., in his official capacity as Coroner for the Parish of Orleans ("Coroner"). This motion, set for submission on December 11, 2024, is before the Court on the briefs without oral argument. For the reasons set forth below, the motion is denied.

**I.   Background**

   *a.  Factual Background*

Between June 23 and July 1, 2023, Dante Gentile allegedly experienced a significant mental health crisis, which culminated in him committing suicide by jumping several stories from a building.[1] Although the responding New Orleans Police Department ("NOPD") officers designated Mr. Gentile as an "unknown victim," he had been rescued by the NOPD from a separate suicide attempt just hours beforehand, arrested in New Orleans twice in the days leading up to his death, and had credit cards listing his name on his person at the time of his death.[2]

After his death, the Coroner took possession of his body.[3] At some point during the two months that Mr. Gentile's remains were stored with the Coroner, the refrigerator containing them

---

[1] Rec. Doc. 1, ¶¶ 7, 23. The building Mr. Gentile jumped from was directly across from the NOPD headquarters on Gravier Street. *Id.* ¶ 22.

[2] *Id.* ¶¶ 9–20, 26.

[3] *Id.* ¶ 28.

stopped working, allegedly causing his body to "decompose at an accelerated rate."[4] By the time Rita Gentile—Mr. Gentile's mother and the plaintiff in this case—received notice of her son's death, Mr. Gentile's remains had become so decomposed that "[Plaintiff] was not permitted to view the body of her only son before he was cremated."[5]

### b. Procedural Background

In June 2024, Plaintiff filed this lawsuit against the Coroner, the New Orleans City Park Improvement Association, the Orleans Parish Sheriff, the Mayor of New Orleans, and the Chief of the NOPD.[6] Plaintiff's claims against the Coroner are limited to state law causes of action for negligent and intentional infliction of emotional distress.[7] The Coroner subsequently filed a Motion to Dismiss for Failure to State a Claim ("First Motion") on August 15, 2024.[8]

In response to the Coroner's First Motion, Plaintiff requested in the alternative that she be granted relief to amend her complaint if the Court found it to be deficient.[9] The Court was satisfied that the face of her original complaint contained enough factual matter to raise a reasonable expectation that discovery will reveal evidence of each element of her claim, *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 257 (5th Cir. 2009), but granted the alternatively requested relief due to a separate pleading deficiency. Namely, the tort claims she asserted lacked a specific standard

---

[4] *Id.* ¶ 29; *contra* Rec. Doc. 50-1, at 5 n.11 (noting that "the body decomposes at a *normal* rate without refrigeration" and asserting that "[i]f the Coroner had indeed caused an 'accelerated decomposition,' plaintiff would have to establish facts to show that the Coroner tampered with the body in a way that would cause the body to deteriorate at a faster pace").

[5] Rec. Doc. 1, ¶ 31. According to her complaint, Plaintiff received notice of Mr. Gentile's death on September 14, 2023, more than two months after Mr. Gentile's death. *Id.* ¶ 30. It is unclear when Mr. Gentile's remains were cremated.

[6] *Id.* ¶¶ 1–4.

[7] *Id.* ¶¶ 37–39.

[8] Rec. Doc. 14-1, at 1.

[9] Rec. Doc. 32, at 9.

of care.[10] *See Butler v. Denka Performance Elastomer, L.L.C.*, 16 F.4th 427, 444–45 (5th Cir. 2021) ("While Louisiana law does impose a 'universal duty' on defendants in a negligence action to use 'reasonable care,' plaintiffs are still required to assert a 'specific standard' of care.") (quoting *Rando v. Anco Insulations, Inc.* 16 So. 3d 1065, 1086 (La. 2009) and *Lemann v. Essen Lane Daiquiris*, 923 So. 2d 627, 633 (La. 2006)). More specifically, the complaint pointed to no statutory, jurisprudential, or any other source of law to support either of her causes of action against the Coroner. *See id.* at 445. Plaintiff subsequently filed her amended complaint on November 5, 2024[11] and the Coroner filed his second Motion to Dismiss for Failure to State a Claim ("Second Motion") on November 15, 2024.[12]

In her Second Amended Complaint, Plaintiff articulated specific duties owed by the Coroner under Louisiana law, including the duty to investigate the cause and manner of death in all cases involving "deaths due to suspected suicide or homicide," La. R.S. § 13:5713(A)(5), and "[d]eaths due to trauma from whatever cause" *id.* § 5713(A)(10);[13] as well as the duties to furnish a death certificate that states "as best he can the cause and manner of death," *id.* § 5713(E)(1), and, if unable to establish the identity of the body by visual means, to use fingerprints.[14] *Id.* § 5713(H). Plaintiff also articulated that the Coroner is immune from liability unless his acts or omissions "constitute criminal, fraudulent, malicious, intentional, willful, outrageous, reckless, or flagrant misconduct." *Id.* § 5713(I).

---

[10] *See* Rec. Doc. 14-1, at 6; Rec. Doc. 1, ¶¶ 37–39.

[11] Rec. Doc. 43 ("Second Amended Complaint").

[12] Rec. Doc. 50.

[13] Rec. Doc. 43, at 1.

[14] *Id.*

The Second Amended Complaint further explains that the Coroner breached the articulated duties in an outrageous and reckless manner when he (i) took more than two months to identify Mr. Gentile's body and notify next of kin despite having access to his credit cards, cell phone, photo identification, arrest records, fingerprints, and mugshots; during which time he (ii) failed to properly preserve Mr. Gentile's body due to a malfunctioning refrigeration system, ultimately allowing the body to become so decomposed that Mr. Gentile's next of kin was not permitted to view it before it was cremated; and, (iii) as a result of cremating the body, deprived Mr. Gentile's next of kin of an alternative burial.[15]

### c. Defendant's Second Motion to Dismiss

In his Second Motion, the Coroner principally argues that, "[c]onsidering the statutory immunity and the requirements for a plaintiff to support a claim against a coroner, plaintiff's allegations, even accepted as true, fail to set forth sufficient facts to state a claim for [intentional infliction of emotional distress] and [negligent infliction of emotional distress] and the complaint against the Coroner must be dismissed with prejudice."[16] In support of his argument, he claims that, "accepting plaintiff's factual allegations as true, they show that the Coroner actually complied with his statutory duties."[17] He ultimately points the Court to *Hassen v. Bowman*, a recent ruling out of the Western District of Louisiana, as support for the above-stated proposition. 3:23-CV-01207, 2024 WL 3152654 (W.D. La. June 24, 2024). The Court discusses *Hassen* in more detail *infra* Section III.

In her response, Plaintiff noted her compliance with the Court's order, distinguished *Hassen* from the facts of the instant case, and reincorporated arguments from her response to

---

[15] *Id.* at 2–3.

[16] Rec. Doc. 50-1, at 2–3.

[17] *Id.* at 3 (emphasis removed).

Defendant's First Motion.[18] Also included with Plaintiff's response are references to an alleged judicial admission made by the Coroner.[19] As the Coroner correctly notes in his reply, the Court may not look beyond the facts of the pleadings to determine whether relief should be granted.[20] *See Boateng v. BP, P.L.C.*, 779 F. App'x 217, 219 (5th Cir. 2019) (noting that matters impermissible for consideration include "evidence introduced in opposition to a 12(b)(6) motion that provides some substantiation for and does not merely reiterate what is said in the pleadings") (quotations and citations omitted)). Accordingly, the Court declines to consider the alleged judicial admission at this stage of the proceedings.

## II. Legal Standards

### a. Rule 12(b)(6)

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). A claim is facially plausible when the plaintiff pleads facts that "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff. *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 816 (5th Cir. 2012) (quoting *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007)). But a court is not bound to accept as true legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 678.

A legally sufficient complaint must establish more than a "sheer possibility" that the plaintiff's claim is true. *Id.* It need not contain detailed factual allegations, but it must go beyond

---

[18] *See* Rec. Doc. 53.

[19] *Id.* at 6.

[20] Rec. Doc. 54 at 3.

labels, legal conclusions, or formulaic recitations of the elements of a cause of action. *Id.* (citing *Twombly*, 550 U.S. at 555); *Coleman v. Sweetin*, 745 F.3d 756, 763–64 (5th Cir. 2014). In other words, the face of the complaint must contain enough factual matter to raise a reasonable expectation that discovery will reveal evidence of each element of the plaintiff's claim. *Lormand*, 565 F.3d at 257. If there are insufficient factual allegations to raise a right to relief above the speculative level, or if it is apparent from the face of the complaint that there is an insuperable bar to relief, the claim must be dismissed. *Twombly*, 550 U.S. at 555; *Jones v. Bock*, 549 U.S. 199, 215 (2007); *Carbe v. Lappin*, 492 F.3d 325, 328 n.9 (5th Cir. 2007).

### b. *Intentional Infliction of Emotional Distress*

The basis for an intentional infliction of emotional distress claim is article 2315 of the Louisiana Civil Code. To establish an intentional infliction of emotional distress claim, a plaintiff must show that (1) the defendant's conduct was extreme and outrageous; (2) the plaintiff suffered severe emotional distress; and (3) the defendant "desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from their conduct." *McPherson v. Ochsner Health Sys. Skilled Nursing Facility W. Campus*, No. CV 23-2433, 2024 WL 3742706, at *4 (E.D. La. Aug. 9, 2024) (citing *White v. Monsanto Co.*, 585 So. 2d 1205, 1209 (La. 1991)). Extreme and outrageous conduct is that which exceeds "all possible bounds of decency" and is "regarded as atrocious and utterly intolerable in a civilized community." *White*, 585 So. 2d at 1209. "The conduct must be intended or calculated to cause severe emotional distress and not just some lesser degree of fright, humiliation, embarrassment, worry, or the like." *Id.*

    *c. Negligent Infliction of Emotional Distress*

In *Spencer v. Valero Refining Meraux, L.L.C.*, 356 So. 3d 936 (La. 2023), the Louisiana Supreme Court articulated the legal standard for negligent infliction of emotional distress claims in cases where there is an absence of physical damage or injury to the plaintiff. In addition to the standard negligence analysis employed in determining whether to impose liability under article 2315 of the Civil Code, a plaintiff also must prove "the especial likelihood of genuine and serious mental distress, arising from the special circumstances, which serves as a guarantee that the claim is not spurious." *Id.* at 950 (internal citations and quotations omitted); *see also Jack v. Evonik Corp.*, 79 F.4th 547, 565–66 (5th Cir. 2024) (discussing the standard set forth in *Spencer*).

### III.    Discussion

The Louisiana Supreme Court has not yet determined whether the duties imposed by La. R.S. § 13:5713 relate to individual members of the public for purposes of imposing tort liability, and the lower courts are split. *Newsome-Goudeau v. Louisiana*, No. 17-0909, 2018 WL 1462110, at *3 (W.D. La. Mar. 23, 2018). But, as one federal district court has noted, "The Louisiana Supreme Court has instructed courts to avoid 'giv[ing] a statute an interpretation that makes any part superfluous or meaningless.' To avoid rendering La. R.S. 13:5713(L)(3) meaningless, the Court concludes that the immunity provision cannot be read to deprive private persons of a cause of action in tort against coroners." *Newsome-Goudeau*, 2018 WL 1462110, at *3 (quoting *Succession of Boyter*, 1999-0761, p. 9 (La. 1/7/00), 756 So.2d 1122, 1129). Relevant cases addressing an emotional distress claim in the context of the duties owed by a coroner in Louisiana at the Rule 12(b)(6) stage are discussed in the paragraphs that follow.

In *Simmons v. Department of Children and Family Services*, the coroner allegedly misplaced a child's body that it received for autopsy, failed to conduct the autopsy, and cremated

and buried the remains without notifying the child's parents or informing them of the grave's location. 2015-0034, p. 2 (La.App. 4 Cir. 6/24/15), 171 So.3d 1147, 1149. The Fourth Circuit Court of Appeal reversed the district court, holding the allegations stated causes of action for negligence and intentional infliction of emotional distress.[21] *Id.* at 1153–54. In arriving at its decision, the court acknowledged that Louisiana law permits the Coroner to "hold any dead body for any length of time that he deems necessary," *id.* at 1153 (citing La. R.S. § 13:5713(B)(3)), but noted that "abuse of such power constitutes the first element of an intentional infliction of emotional distress claim." *Id.* at 1153–54 (citing *White*, 585 So. 2d at 1209–10, and noting that "in the context of an intentional infliction of emotional distress claim, the first element—extreme and outrageous conduct—may arise from an abuse by an actor in a position of power to affect another's interests"). The court proceeded to find that "the coroner's legal control over the body put the coroner's office in the position of power to affect the plaintiffs' interests." *Id.* at 1154. Notably, the coroner argued on appeal that he was entitled to statutory immunity, but the court ultimately found that the allegations constituted the requisite outrageous and flagrant misconduct to overcome the immunity defense. *Id.* at 1153.

Likewise, in *Woltmann v. Preston*, a case before this Court, the coroner—despite being in direct contact with the plaintiff's counsel—allegedly (i) failed to return various reports, (ii) failed to notify the plaintiffs that the decedent's body had been released by the coroner's office for cremation, and (iii) cremated the decedent's body without giving notice to the plaintiffs' counsel. No. 16-6492, Rec. Doc. 1, Compl. ¶¶ XVII–XX. This Court declined to consider the coroner's statutory immunity arguments at the Rule 12(b)(6) stage and found that the plaintiffs' emotional

---

[21] The Court notes that, despite Plaintiff's heavy reliance on *Simmons* (*see, e.g.*, Rec. Doc. 53, at 3–6), its merits have gone unaddressed by the Coroner. *See* Rec. Doc. 50, 54.

distress and mental anguish claims were sufficiently pleaded to withstand dismissal. *Woltmann v. Preston*, No. 16-6492, 2016 WL 4419131, at *2 (E.D. La. Aug. 19, 2016).

In *Crawford v. Caddo Parish Coroner's Office*, a case in the Western District of Louisiana, the plaintiff sued the coroner's office, alleging a contracted employee negligently performed an autopsy which contributed to a wrongful homicide conviction. No. 17-01509, 2019 WL 1413006, at *1–2 (W.D. La. Mar. 28, 2019). The coroner's office moved to dismiss the plaintiff's claims, including a claim for intentional infliction of emotional distress, based on statutory immunity. *Id.* at *11. The court denied the motion as it related to the emotional distress claim, finding that the facts provided by the plaintiff established the coroner "committed 'criminal, fraudulent, malicious, intentional, willful, outrageous, reckless, or flagrant misconduct' during his investigation into [the decedent's] death." *Id.* at *12.

In a case decided just one year prior to *Crawford*, on the other hand, a Western District of Louisiana court dismissed a plaintiff's claims, finding the coroner was shielded by the immunity provided under La. R.S. § 13:5713 where the plaintiff alleged the coroner was liable in tort for violating his statutory duties. *Newsome-Goudeau*, 2018 WL 1462110, at *3. The court held that a private right of action under La. R.S. § 13:5713 exists, but granted the coroner's motion after finding that the plaintiff failed to substantiate her allegations that the coroner's actions were intentional. *Id.* at *5.

Similarly, in *Hassen v. Bowman*, the case the Coroner contends should control here, the plaintiff was detained and transported to a mental health facility after she was alleged by coworkers to have homicidal or suicidal thoughts. 2024 WL 3152654, at *2. During her three-day stay at the mental health facility, the parish coroner examined her and executed a Coroner's Emergency Certificate. *Id.* Hassen later filed a lawsuit against multiple defendants, including the coroner who

examined her, asserting a myriad of claims. *Id.* at *1.[22] Hassen's claim against the coroner, unlike the claims in the instant case, only amounted to the "barebones allegation that the coroner 'came to Serenity Springs and completed a [CEC but] did not complete the procedural due process required' and acted 'with [bad] faith, bad motive, and bad will.'" 2024 WL 3152654, at *10. As a result of the deficient pleading, the court noted "it is unclear precisely what alleged conduct gives rise to Hassen's IIED claim." *Id.* at *22. The court ultimately dismissed the plaintiff's claims, including her claim for intentional infliction of emotional distress, on the basis that the conclusory statements, which were unsupported by additional factual allegations, were not enough to overcome the coroner's statutory immunity. *Id.* at *12 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

Finally, in *LeJeune v. Causey*, the First Circuit Court of Appeal held that the "duty statutorily imposed upon the coroner is for the benefit of the sovereign, and not the private individual or the individual's private interests." 93-0455 (La.App. 1 Cir. 3/11/94); 634 So.2d 34, 37 (citing *Gavagan v. Marshall*, 33 So. 2d 862, 867 (Fla. 1948)). On this basis, the court affirmed dismissal of the plaintiff's claims against a coroner where he was alleged to have negligently failed to perform an autopsy, to investigate the cause of death at the scene of an accident, and to provide the plaintiffs, the decedent's parents, "with any information concerning the circumstances surrounding the death or cause of death." *Id.* at 36–37. As other courts have noted, however, the cases comprising the legal authority underlying the *LeJeune* ruling do not necessarily support its holding. *See Newsome-Goudeau*, 2018 WL 1462110, at *4.[23]

---

[22] *See Hassen*, 2024 WL 3152654, at *1 ("Hassen seeks injunctive relief and damages under 42 U.S.C. § 1983 for alleged violations of the Fourth Amendment, Fourteenth Amendment, and Louisiana Constitution. She also seeks relief for Defendants' alleged failure to intervene, false arrest, abuse of process, intentional infliction of emotional distress ("IIED"), defamation, civil conspiracy, and negligent hiring.") (internal citations omitted).

[23] In *Newsome-Goudeau*, the court criticized the *LeJeune* holding for the following reasons. 2024 WL 3152654, at *12. First, *Sizemore v. West Jefferson General Hospital*, 260 So. 2d 800, 802 (La. App. Ct. 1972) stands primarily for

Having reviewed the cases underlying the *LeJeune* holding, the Court finds it unpersuasive in the context of the present case. The Court is likewise unconvinced that *Hassen* is persuasive here because the instant allegations are markedly dissimilar. Plaintiff's allegations here are far more specific and the Coroner's alleged conduct in this case is distinct from the conduct of the coroner in *Hassen*.

With the foregoing in mind, the Court is persuaded that Plaintiff has sufficiently pleaded her case and that the allegations articulated in the Second Amended Complaint are consistent with previous rulings of this Court and others. This includes, but is not limited to, the allegations that the Coroner acted in an outrageous and reckless manner when he (i) took more than two months to identify Mr. Gentile's body and notify next of kin despite having access to his credit cards, cell phone, photo identification, arrest records, fingerprints, and mugshots; during which time he (ii) failed to properly preserve Mr. Gentile's body due to a malfunctioning refrigeration system, ultimately allowing the body to become so decomposed that Mr. Gentile's next of kin was not permitted to view it before it was cremated; and, (iii) as a result of cremating the body, deprived Mr. Gentile's next of kin of an alternative burial.[24]

Because these allegations occurred while the Coroner maintained legal control over Mr. Gentile's body, the Court finds that the Coroner was in a position of power to affect Plaintiff's interests and the allegations, thus, meet the threshold for the "extreme and outrageous" and the

---

the proposition that mere disagreement with a coroner who has complied with his statutory duties is not actionable. Second, the holding of *Mullins v. State*, 387 So.2d 1151 (La. 1980) is that coroners, like district attorneys, are state rather than parochial agents. In other words, the case does not suggest that coroners do not have a duty to members of the public. Finally, the *LeJeune* court relied on *Gavagan v. Marshall*, 33 So.2d 862, 867 (Fla. 1948), a Florida Supreme Court case. And, although the Florida court stated that an "inquest is for the benefit of the sovereign, and not for private interests," it did so in order to conclude that because the public pays for inquests, the state may "prescribe conditions precedent for the holding of an inquest for pay." *Gavagan*, 33 So.2d at 867. *Gavagan* thus did not address whether a private person has a cause of action in tort against a coroner.

[24] Rec. Doc. 43, at 2–3.

"intent" prongs of intentional infliction of emotional distress. *Simmons*, 171 So.3d at 1154. And because Plaintiff was deprived of burying Mr. Gentile due to the Coroner's alleged acts or omissions, the severe emotional distress prong is likewise satisfied. *Id.* For similar reasons, Plaintiff has also met her pleading burden for her negligent infliction of emotional distress claim.

The Court's findings are expressly limited to Plaintiff having overcome the pleading burden at the 12(b)(6) stage. As Plaintiff herself notes, "The Coroner will have another opportunity to challenge the sufficiency of the facts in this case after discovery should he decide to file a motion for summary judgment."[25]

Accordingly;

**IT IS ORDERED** that the **Motion to Dismiss for Failure to State a Claim (Rec. Doc. 50)** is **DENIED**.

January 27, 2025



JUDGE JAY C. ZAINEY
UNITED STATES DISTRICT JUDGE

---

[25] Rec. Doc. 53, at 7.