UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **RITA GENTILE** | **CIVIL ACTION** |
| **VERSUS** | **NO:   24-1607** |
| **NEW ORLEANS CITY PARK IMPROVEMENT ASSN., ET AL** | **SECTION: "A" (4)** |

**ORDER**

Before the Court is Plaintiff's **Motion for Sanctions (R. Doc. 73)**. Plaintiff seeks sanctions against Defendant Orleans Parish Sheriff Susan Hutson for her failure to produce discovery responses by the deadline agreed by counsel, which was memorialized in the Court's order (R. Doc. 71) on Plaintiff's **Motion to Compel (R. Doc. 63)**. Plaintiff also asserts that the discovery dispute raised by her Motion to Compel remains unresolved, because the discovery responses they have received from Sheriff Hutson to date are inadequate. See R. Doc. 84. The Court therefore reopened the Motion to Compel (R. Doc. 63) to address this remaining unresolved discovery dispute.

No Opposition to the Motion for Sanctions was filed. The Motion for Sanctions was first heard on June 18, 2025, and the Court conducted a supplemental hearing regarding both the Motion to Compel and Motion for Sanctions on July 9, 2025.

**I.    Background**

    **A.  Factual Background**

Plaintiff Rita Gentile ("Ms. Gentile") alleges that her twenty-six-year-old son, Dante Gentile ("Dante"), suffered a preventable death by suicide while visiting New Orleans on June 30, 2023. R. Doc. 1 at 2. Ms. Gentile asserts that there were multiple opportunities to prevent Dante's death, and that Defendants New Orleans City Park Improvement Association, Orleans Parish Sheriff Susan Hutson, New Orleans Mayor LaToya Cantrell, and New Orleans Police Department

Chief Anne Kirkpatrick failed to follow proper procedure for handling an individual facing an acute mental health crisis. *Id*.

Ms. Gentile alleges that Dante was first arrested by the City Park Policy Department ("CPPD") on June 23, 2023, and confined to the Orleans Justice Center ("OJC") on June 23 and 24. R. Doc. 1 at 3. Ms. Gentile alleges that even though Dante's medical records indicated an urgent need to see a mental health professional, Sheriff Hutson "fast tracked" Dante for release with no instructions for mental health care on June 24. *Id.* at 3-4.

Ms. Gentile alleges that Dante was arrested in City Park for a second time on June 25, 2023. R. Doc. 1 at 4-5. Ms. Gentile asserts that Dante was once against taken to OJC, and that the presiding Judge on his care ordered that Dante be placed on suicide watch and receive mental health assessment. *Id.* Ms. Gentile alleges that a psychiatrist of OJC diagnosed Dante with "unspecified psychosis", prescribed antipsychotic medication to him, and instructed that he be routed to University Medical Center ("UMC") for assessment upon release. *Id.*

Ms. Gentile asserts that despite being on suicide watch, wearing a suicide smock, being prescribed anti-psychotic medication, and with orders to be released to UMC, Sheriff Hutson released Dante on June 30, 2023, with no instructions for mental health care. R. Doc. 1 at 4-5.

Ms. Gentile alleges that on the evening of his release, Dante went to the on-ramp of the N. Claiborne Overpass with the intent of jumping. R. Doc. 1 at 5-6. Ms. Gentile alleges that an New Orleans Police Department ("NOPD") officer was able to coax Dante off the overpass, and that even though Dante told them that he intended to jump they simply let him walk away. *Id.* Ms. Gentile alleges that Dante then walked to the Falstaff apartment building on Gravier Street, gained access to the roof, and jumped to his death at approximately midnight on June 30, 2023. *Id.*

Ms. Gentile contends that Dante's death was designated as "unclassified" without further investigation, and that Dante was designated as an "unknown victim" despite having credit cards on his person with his name on them. R. Doc. 1 at 7. Ms. Gentile further alleges that Orleans Parish Coroner Dr. Dwight McKenna took more than two months to identify Dante's body and notify next of kin. R. Doc. 1 at 7-8. Ms. Gentile contends that Dr. McKenna failed to properly preserve Dante's body, meaning that she was not permitted to view her son before his body was cremated. *Id*.

Sheriff Hutson denied Ms. Gentile's allegations and raised the affirmative defense of qualified immunity in her Answer. See R. Doc. 39 at 9. However, Sheriff Hutson did not assert qualified immunity as a bar to any discovery.

### B. Motion to Compel

On April 3, 2025, Ms. Gentile filed a Motion to Compel asserting that she propounded Interrogatories and Requests for Production on Sheriff Hutson on January 14, 2025, and that she had not received responses to date. R. Doc. 63-1 at 1. No Opposition to the Motion was filed.

At the Court's hearing for the Motion to Compel on April 23, 2025, the Court was informed that Sheriff Hutson's counsel had provided documents in response to Ms. Gentile's Requests for Production the night before and had agreed to provide written responses to her Interrogatories. R. Doc. 71 at 6-7. Ms. Gentile's counsel therefore requested that the Court grant their Motion to Compel, set a deadline for Sheriff Hutson's counsel to provide their written Interrogatory responses, and order that their objections are hereby waived. *Id.*

At this hearing, Sheriff Hutson's counsel agreed to produce Interrogatory responses and did not contest the untimeliness of his production. R. Doc. 71 at 6. Despite this untimeliness,

3

Sheriff Hutson's counsel requested that the Court allow him to reserve the right to raise objections. *Id*.

The Court denied this request to reserve the right to raise objections, because Sheriff Hutson's counsel did not provide any good cause for his failure to comply with the thirty (30) day deadline to respond to Interrogatories required by Rule 33. R. Doc. 71 at 6-7. See FED. R. CIV. P. 33(b)(2). Therefore, the Court ordered that all general objections, except those protected by attorney-client or work-product privilege, were waived. *Id*. The Court further ordered that Sheriff Hutson's Interrogatory responses were due by no later than fifteen (15) days from the issuance of the Court's written Order on April 25, 2025, setting a deadline of May 10, 2025. *Id*.

### C. Motion for Sanctions

On June 2, 2025, Ms. Gentile filed a Motion for Sanctions against Sheriff Hutson asserting that she had failed to provide Interrogatory responses by the fifteen (15) day deadline, as agreed by counsel at the Court's prior hearing on the Motion to Compel (R. Doc. 63) and memorialized in the Court's discovery order (R. Doc. 71). R. Doc. 73 at 1. In fact, Ms. Gentile asserted that Sheriff Hutson had failed to produce <u>any</u> Interrogatory responses by the time the Motion for Sanctions was filed. R. Doc. 73-1 at 2. Ms. Gentile asserted that Sheriff Hutson's delay was affecting her ability to retain proper experts and provide expert reports in accordance with the Court's Scheduling Order. *Id.* See R. Doc. 72 at 2 (setting Ms. Gentile's expert report deadline as September 5, 2025). Ms. Gentile therefore requested that the Court order Sheriff Hutson to provide the requested discovery and award $500 in attorneys' fees as a sanction under Rule 37. *Id.* at 1.

Sheriff Hutson did not file an Opposition to the Motion for Sanctions.

4

### D. First Hearing on the Motion for Sanctions

At the Court's first hearing on the Motion for Sanctions on June 18, 2025, the undersigned was informed that Ms. Gentile's counsel had received supplemental responses to the discovery requests at issue the night before the Court's hearing. However, Ms. Gentile's counsel asserted that he had not had an opportunity to review the responses due to the late production, so he could not attest to whether the responses were complete.

The Court found that the discovery dispute raised in Ms. Gentile's Motion to Compel therefore remained unresolved and reopened the Motion to address this continuing saga of untimely and incomplete discovery responses before resolving the Motion for Sanctions. See R. Doc. 63. See also R. Doc. 73. The Court therefore ordered counsel to appear for a supplemental hearing on July 9, 2025, to give counsel an opportunity to meet and confer on the disputed discovery responses pursuant to the Motion to Compel. R. Doc. 82. The Court also ordered Sheriff Hutson's counsel to file a supplemental memorandum pursuant to the Motion for Sanctions that identified: (1) when Ms. Gentile's discovery request was communicated to Sheriff Hutson; (2) what steps they took to comply; and (3) when their attempt to comply occurred. *Id.*

### E. Supplemental Briefing

In his supplemental memorandum, Sheriff Hutson's counsel asserted that although Ms. Gentile's discovery requests were propounded on January 14, 2025, he did not contact Sheriff Hutson's staff to seek responsive documents and information until March 25, 2025. R. Doc. 83 at 1-2. Sheriff Hutson's counsel did not provide any explanation for his failure to contact Sheriff Hutson's staff within the thirty-day deadline to respond set by Rule 33 and Rule 34, which passed

5

on February 13, 2025.¹ *Id.* However, he asserted that Sheriff Hutson's staff followed up with him on March 28, 2025, and April 2, 2025. *Id.*

Sheriff Hutson's counsel asserted that he received approximately 100 pages of documents from Sheriff Hutson's staff on April 22, 2025, and that he provided the documents to counsel for all parties two days later on April 24, 2025. R. Doc. 83 at 1-2. Given that the requests were issued on January 14, 2025, Sheriff Hutson's responses were more than two months overdue by the time they were provided to Ms. Gentile's counsel on April 24, 2025.² Sheriff Hutson's counsel further asserted that he obtained additional responsive documents at an unspecified date and produced them to counsel for all parties on June 17, 2025, the day before the Court's first hearing on the Motion for Sanctions. *Id*. This June 17, 2025, production was made over four months past the February 13, 2025, deadline to respond.³

Sheriff Hutson's counsel alleged that this timeline did not demonstrate bad faith, and that Ms. Gentile has not been prejudiced since discovery has been moving forward with the other parties in this matter. R. Doc. 83 at 2. Therefore, he requested that the Court deny Ms. Gentile's Motion for Sanctions. *Id*.

Ms. Gentile filed a response to Sheriff Hutson's memorandum on July 8, 2025, the day before the Court's supplemental hearing. R. Doc. 84. Therein, Ms. Gentile asserted that more than monetary sanctions were now required because the discovery responses she had received from Sheriff Hutson were inadequate and several months overdue. R. Doc. 84. Ms. Gentile asserted that

---

¹ Under the Federal Rules of Civil Procedure, responses to Interrogatories and Requests for Production are due "within 30 days after being served[.]" FED. R. CIV. P. 33(b)(2). See also FED. R. CIV. P. 34(b)(2)(A). Ms. Gentile's Interrogatories and Requests for Production were propounded on January 14, 2025, meaning that responses were due thirty (30) days later on February 13, 2025. However, Sheriff Hutson's counsel did not communicate Ms. Gentile's requests to Sheriff Hutson until March 25, 2025, a full sixty-eight (68) days after the requests were propounded.

² Sheriff Hutson's first set of responses were provided on April 24, 2025, seventy (70) days after the requests were due on February 13, 2025. See FED. R. CIV. P. 33(b)(2). See also FED. R. CIV. P. 34(b)(2)(A).

³ Sheriff Hutson's supplemental responses were provided on June 17, 2025, one hundred and twenty four (124) days after the requests were due on February 13, 2025. See FED. R. CIV. P. 33(b)(2). See also FED. R. CIV. P. 34(b)(2)(A).

many of the disputed discovery requests remained unresolved after the parties' meet and confer, and alleged that these issues have caused damage to "the movement of this case." *Id.* Ms. Gentile therefore requested that the Court compel Sheriff Hutson to provide complete responses and prohibit her from supporting or opposing "designated claims or defenses" or "introducing designated matters in evidence" as a sanction under Rule 37(b)(2)(A). *Id.* However, Ms. Gentile did not specify what claims, defenses, or evidence she sought to exclude. *Id.*

II.     **Standard of Review**

    A. **Motion to Compel Discovery**

Federal Rule of Civil Procedure 26(b)(1) sets the scope of discovery to include "any non-privileged matter that is relevant to any party's claim or defense[.]" FED. R. CIV. P. 26(b)(1). Rule 26(b)(1) further specifies that "[i]nformation within this scope of discovery need not be admissible in evidence to be discovered." *Id.* Rule 26(b)(1) also specifies that discovery must be "proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.*

Rule 33 allows a party to serve another party written interrogatories which "must, to the extent it is not objected to, be answered separately and fully in writing under oath." FED. R. CIV. P. 33(b)(3). Rule 33 states that the "responding party must serve its answers and any objections within 30 days after being served with the interrogatories." FED. R. CIV. P. 33(b)(2). The person who answers the interrogatories must sign them, and the attorney must sign any objections. FED. R. CIV. P. 33(b)(5).

Rule 34 allows a party to request the production of "any designated documents or electronically stored information" or "any designated tangible things." FED. R. CIV. P. 34(a)(1). Pursuant to this rule, the responding party must produce the documents as they are kept in the usual course of business or must organize and label them to correspond to the categories in the request. FED. R. CIV. P. 34(E)(i). The responding party must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms unless the request specifies a form for producing electronically stored information. FED. R. CIV. P. 34(E)(ii). For each item or category of documents requested, a "response must . . . state with specificity the grounds for objecting to the request, including the reasons." FED. R. CIV. P. 34 (b)(2)(B).

Rule 37 allows a party to move for an order compelling discovery from another party in certain circumstances and provides sanctions for failure to cooperate with discovery. However, Motion to Compel under Rule 37(a) must allege that the responding party has failed to properly cooperate with discovery and "include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." FED. R. CIV. P. 37(a)(1).

**B. Request for Sanctions**

Rule 37 applies when a party has violated a court order, such as a discovery ruling, during a period of active litigation. FED. R. CIV. P. 37(b)(2); *Brandt v. Vulcan, Inc.*, 30 F.3d 752, 756 & n.7 (7th Cir. 1994); *see also Settles v. United States*, No. 17-1272, 2018 WL 5733167, at *3 (W.D. Tex. Aug. 29, 2018). Under Rule 37, the district court may award the following sanctions:

> "(1) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims; (2) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence; (3) striking pleadings in whole or in part; (4) staying further proceedings until the order is obeyed; (5) dismissing the action or proceeding in whole or in part; (6) rendering a default judgment against the disobedient

> party; or (7) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination."

FED. R. CIV. P. 37(b)(2)(A).

Rule 37 further requires that, "[i]nstead of or in addition to the orders [described under Rule 37(b)(2)(A) ], the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." FED. R. CIV. P. 37(b)(2)(C). *See also* 28 U.S.C.A. § 1927. Rule 37 also provides sanctions where a party has failed to preserve electronically stored information. FED. R. CIV. P. 37(e).

Federal jurisprudence provides that the undersigned has authority to enter a non-dispositive order granting attorneys' fees or other non-dispositive sanctions under Federal Rule of Civil Procedure 37(e). See 28 U.S.C. § 636(b). See also *Merritt v. Int'l Bhd. of Boilermakers*, 649 F.2d 1013, 1016-17 (5th Cir. 1981) (per curiam) (finding that a magistrate judge has authority to enter a non-dispositive order granting attorneys' fees as a sanction under Federal Rule of Civil Procedure 37).

### III. <u>Analysis</u>

#### A. Disputed Discovery

At the Court's supplemental hearing on July 9, 2025, the undersigned was informed that Sheriff Hutson's responses to Interrogatory Nos. 3, 4, 6, 8, 9, 10, 11, 14, 15, 17, 18, 19, 20, and 22 and Request for Production Nos. 1, 2, 3, 5, 6, 7, 11, 12, 13, 14, 15, 17, 18, 21, and 22 were still at issue. The Court therefore went through each of the disputed discovery requests with counsel before evaluating Ms. Gentile's request for sanctions, as shown below.

### 1. *Disputed Interrogatories*

At the Court's supplemental hearing, Ms. Gentile's counsel asserted that for most of the Interrogatories at issue, such as Interrogatory No. 3, Sheriff Hutson had simply provided information regarding Wellpath L.L.C. ("Wellpath"), their third-party contractor that provides mental health services for OJC. However, Ms. Gentile's counsel asserted that Sheriff Hutson had failed to provide responsive information regarding to the Sheriff, her employees, or OJC in response to Interrogatory Nos. 3, 4, 6, 8, 9, 10, 11, 14, 15, 17, 18, 19, 20, and 22.

In response, Sheriff Hutson's counsel explained that he repeatedly contacted Sheriff Hutson's paralegal throughout the discovery process but was not personally involved in searching for responsive documents and information. Therefore, Sheriff Hutson's counsel could not attest to whether any other responsive documents, other than what was previously produced, were in the Sheriff's possession.

Upon review, Interrogatory No. 3 seeks the identify of all Sheriff employees or contractors involved in Dante's intake, evaluation, supervision, or release from OJC. R. Doc. 84-3 at 2-3. Sheriff Hutson's response to Interrogatory No. 3 identified employees for Wellpath but failed to identify any Sheriff employees. *Id.*

Considering that at least some Sheriff employees would have to be involved with Dante's intake, evaluation, supervision, or release, the Court found that Sheriff Hutson's response to Interrogatory No. 3 was insufficient and must be supplemented. The Court found that Sheriff Hutson could not merely reference Wellpath without providing responsive information and records regarding the Sheriff, her employees, or OJC. The Court also found that Interrogatory Nos. 4, 8, 9, 11, 14, 15, 18, 19, 20, and 22 present the same issue.

However, the Court found that Interrogatory No. 20 was duplicative of Interrogatory No. 8, since both requests seek information regarding the decision to release Dante. The Court therefore ordered Ms. Gentile's counsel to identify which response he sought to compel further response to, and he selected Interrogatory No. 20. Therefore, the Court ordered Sheriff Hutson to supplement her response to Interrogatory No. 20, but not Interrogatory No. 8. The Court also found that Interrogatory No. 22 lacked an appropriate temporal limitation and ordered Ms. Gentile's counsel to amend the request to provide one.

Therefore, the Court ordered Sheriff Hutson to supplement her response to Interrogatory Nos. 3, 4, 9, 11, 14, 15, 18, 19, and 20. The Court also noted that Interrogatory No. 10 requested information regarding the Sheriff's knowledge of Dante's suicide and any steps taken in response to such information. R. Doc. 84-3 at 7. Sheriff Hutson's response simply indicated that his suicide took place off the Sheriff's property. *Id.* Therefore, the Court found that Sheriff Hutson's response to Interrogatory No. 10 was non-responsive and must be supplemented.

The Court further ordered Sheriff Hutson's counsel to go to the Sheriff's office himself and conduct his own search for responsive information and records for Ms. Gentile's discovery requests, rather than improperly relying on Sheriff Hutson's paralegal to do so. See *Weatherspoon v. 739 Iberville, LLC,* No. 21-225, 2022 WL 824618, at *9 (E.D. La. Mar. 18, 2022) (Roby, M.J.) (finding that "counsel overly relied on their client's representation about the existence of documents but did not physically look for the documents themselves until much later in the discovery process"). If he determines that no responsive information or records exist, Sheriff Hutson's counsel must provide a supplemental response stating such.

However, the Court found that Sheriff Hutson's response to Interrogatory Nos. 6 and 17 were sufficient, since the additional information requested by Ms. Gentile's counsel at the Court's

11

hearing fell outside the scope of these requests. For Interrogatory No. 6, Ms. Gentile's counsel requested that Sheriff Hutson provide the full name of a Sheriff's Deputy mentioned in a report regarding Dante's mental health care at OJC. However, Interrogatory No. 6 simply requested that Sheriff Hutson identify any written or verbal orders regarding Dante's mental health care at OJC and identify who issued them, not identify any individuals mentioned in such orders. R. Doc. 84-3 at 4.

For Interrogatory No. 17, Ms. Gentile's counsel requested that Sheriff Huston identify whether any other party bears responsibility for the incident in controversy. However, Sheriff Hutson's response to Interrogatory No. 17 clearly identifies Wellpath as the responsible entity for mental health services at OJC. R. Doc. 84-3 at 9. When the undersigned asked Sheriff Hutson's counsel to clarify what he meant, he asserted that this response identified Wellpath as a party that bears responsibility for the incident at issue. Therefore, the Court ordered that Sheriff Hutson was not required to provide further response to Interrogatory Nos. 6 and 17.

### 2. *Disputed Requests for Production*

Ms. Gentile's counsel further asserted that many of Sheriff Hutson's Request for Production responses, such as Request for Production Nos. 1 and 2, similarly cited only to Wellpath's medical records. Ms. Gentile's counsel asserted that Sheriff Hutson had failed to produce responsive records concerning Sheriff Hutson, her employees, and OJC in her responses to RFP Nos. 1, 2, 3, 5, 6, 7, 11, 12, 13, 14, 15, 17, 18, 21, and 22. Ms. Gentile's counsel further asserted that Sheriff Hutson's responses failed to indicate what, if any, investigation was conducted for responsive documents.

Sheriff Hutson's counsel similarly asserted that he had provided all of the documents he received from Sheriff Hutson's staff, and that he could not personally attest to whether any additional documents were in Sheriff Hutson's possession.

Upon review, RFP No. 1 requested documents identifying the names, titles, and roles of any Sheriff personnel who were involved in Dante's processing, detainment, or release. R. Doc. 84-3 at 11-12. RFP No. 2 similarly requested "logs, schedules, or records indicating the shifts and assignments of the officers identified in Request for Production 1 above." *Id.* In response to both requests, Sheriff Hutson simply stated "see attached medical records generated by Wellpath." *Id.*

The Court found that Sheriff Hutson's responses to RFP Nos. 1 and 2 were non-responsive, since they failed to include any of the Sheriff's logs, schedules, assignments, or other responsive records concerning the personnel involved in Dante's processing, detainment, or release. The Court also found that Sheriff Hutson's responses to RFP Nos. 3, 7, 14, and 15 had the same problem of citing only to Wellpath's medical records without providing any other responsive documents in her possession.

However, the Court found that as to RFP No. 3, Sheriff Hutson was only required to supplement her response to include responsive detainment records, including records from Dante's intake, observation, and discharge. The Court ordered that Sheriff Hutson was not required to provide documents regarding Dante's arrest or video recordings from OJC, since NOPD is the proper source for Dante's arrest records and Ms. Gentile's counsel could not verify when he sent a preservation letter to Sheriff Hutson at the Court's hearing.

Subject to this limitation, the Court ordered Sheriff Hutson to supplement her response to RFP Nos. 1, 2, 3, 7, 14, and 15. The Court also found that Sheriff Hutson's response to RFP No. 11, which provided only an Acceptance and Booking policy, failed to include the requested

personnel training records for handling of detainees with mental health conditions. R. Doc. 84-3 at 14. The Court found that this was non-responsive and therefore ordered Sheriff Hutson to supplement her response to RFP No. 11.

The Court also ordered Sheriff Hutson to supplement her response to RFP Nos. 12, 17, 18, and 22, to clarify what, if any, investigation was conducted for the requested documents prior to determining that none were in the Sheriff's possession. See R. Doc. 84-3 at 15-17. The Court further ordered Sheriff Hutson's counsel to conduct his own investigation for responsive documents prior to supplementing these responses, and either produce the requested documents or identify what steps he took to determine that none exist. However, the Court noted that Sheriff Hutson was not obligated to provide external records of lawsuits concerning detainees as OJC, as requested by RFP No. 17, since such records are already accessible to Ms. Gentile's counsel.

The Court also found that Sheriff Hutson's response to RFP No. 5 was sufficient, since it indicated that she does not possess any of the requested electronic records or retention policies for body camera footage or surveillance video. R. Doc. 84-3 at 13. Finally, Ms. Gentile's counsel acknowledged that RFP No. 6 was duplicative of RFP No. 3, that RFP No. 13 was duplicative of RFP No. 2, and that RFP No. 21 was duplicative of RFP No. 18. Therefore, the Court ordered that Sheriff Hutson was not required to provide supplemental responses to RFP Nos. 6, 13, or 21.

After resolving this extensive discovery saga, the Court then addressed Ms. Gentile's request for sanctions, as discussed below.

### B. Request for Sanctions

Although Ms. Gentile's Motion for Sanctions initially requested only $500 in attorneys' fees, Ms. Gentile now asserts that more serious sanctions are required because the discovery responses they have received from Sheriff Hutson are inadequate and several months overdue. R.

14

Doc. 84. Ms. Gentile seeks to prohibit Sheriff Hutson from supporting or opposing unspecified "designated claims or defenses" or "introducing designated matters in evidence." *Id*. In support, Ms. Gentile asserts that Sheriff Hutson's delays have slowed the movement of this case and therefore prejudiced her. *Id.*

Sheriff Hutson's counsel contends that there is no evidence of bad faith to support the sanctions requested by Ms. Gentile and asserts that she has not been prejudiced since discovery has been moving forward with the other parties in this matter. R. Doc. 83 at 2.

Although the district court has discretion to impose lesser sanctions without a showing of prejudice, imposing more severe sanctions is justified only where the opposing party has suffered palpable prejudice. *Martin v. Fidelity Nat. Title Ins. Co.*, No. 09-4195, 2011 WL 4625335, at *2 (E.D. La. Oct. 3, 2011) (Vance, S.). Additionally, the undersigned has authority to enter a non-dispositive order granting attorneys' fees or other non-dispositive sanctions under Federal Rule of Civil Procedure 37(e) or deny a request for what might be considered a dispositive sanction. *See* 28 U.S.C. § 636(b); *Merritt v. Int'l Bhd. of Boilermakers*, 649 F.2d 1013, 1016-17 (5th Cir. 1981) (per curiam) (finding that a magistrate judge has authority to enter a non-dispositive order granting attorneys' fees as a sanction under Federal Rule of Civil Procedure 37).

In this case, Ms. Gentile does not identify which claims or defenses she seeks to prohibit Sheriff Hutson from supporting or opposing, or what designated matters she seeks to prohibit Sheriff Hutson from introducing into evidence. See R. Doc. 84. However, preventing Sheriff Hutson from being able to prepare a meaningful opposition to Ms. Gentile's claims would "essentially result in a dispositive sanction[.]" See *NW Pipe Co. v. DeWolff, Boberg and Associates, Inc.,* No. 10-0840, 2012 WL 137585, at *4 (C.D. Cal. Jan. 17, 2012) (Bristow, M.J.) (denying request to prohibit plaintiff from introducing evidence of damages due to discovery

violations on the basis that an award of monetary sanctions against the plaintiff was the appropriate sanction). See also *Dartson v. Villa*, No. 17-569, 2018 WL 3528721, at *34 (N.D. Tex. Apr. 2, 2018) (Horan, M.J.) (denying request to prohibit plaintiff from presenting evidence of mental anguish damages as a discovery sanction on the basis that an award of attorneys' fees was the appropriate sanction under Rule 37).

Ms. Gentile does not explain how Sheriff Hutson's failure to provide complete responses to their discovery requests has resulted in "palpable prejudice", as required for a serious, dispositive sanction. *Martin*, No. 09-4195 at *2. Additionally, the discovery deadline in this matter is November 4, 2025. R. Doc. 72. Although Sheriff Hutson's counsel's delay was substantial, Ms. Gentile has not shown that any prejudice she suffered from this delay is sufficient to warrant more serious sanctions under Rule 37. For example, in *Yazdchi v. Wells Fargo Bank, N.A.,* the Court granted a request to prohibit the plaintiff from introducing untimely produced discovery that supported their claims at trial, because the Court had ordered the plaintiff to produce the same discovery months earlier and plaintiff failed to do so until less than a month before trial. No. 15-568, 2018 WL 8753728, at *3 (S.D. Tex. Dec. 3, 2018) (Huttner, D.). Unlike the *Yazdchi* case, there are five months remaining before the discovery period in this matter closes. See R. Doc. 72. Therefore, Ms. Gentile's request to prohibit Sheriff Hutson from supporting or opposing "designated claims or defenses" or "introducing designated matters in evidence" is denied. Further, the Court finds that an award of attorneys' fees is the appropriate sanction.

The undersigned must now determine which individual to assess Ms. Gentile's $500 award of attorneys' fees against. Rule 37 provides that the Court "must order an award of attorneys' fees against the disobedient party, the attorney advising that party, or both to pay the reasonable

expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." FED. R. CIV. P. 37(b)(2)(C).

Upon review, Sheriff Hutson's counsel's delay in communicating Ms. Gentile's discovery requests to his client made it impossible for Sheriff Hutson to meet the thirty-day deadline to respond under Rule 33. See FED. R. CIV. P. 33(b)(2). Furthermore, Sheriff Hutson's counsel asserted that he had multiple calls with Sheriff Hutson's paralegal regarding the discovery requests at issue but acknowledged that he never went down to the Sheriff's office to conduct a search himself. At the Court's supplemental hearing on July 9, 2025, the undersigned also found that counsel's instructions to Sheriff Hutson's paralegal failed to give them enough information to identify all responsive discovery. The Court also notes a pattern emerging in this case, where Sheriff Hutson's counsel fails to provide discovery responses until the evening before he has been ordered to appear before the undersigned. These untimely, eleventh-hour productions failed to give Ms. Gentile's counsel an opportunity to review Sheriff Hutson's responses prior to the Court's hearings.

By contrast, Sheriff Hutson's staff followed up with counsel within three days of receiving the discovery requests and provided multiple follow-up communications regarding that status of their search for responsive information and records. R. Doc. 83 at 1-2. Therefore, the Court finds that Sheriff Hutson's counsel is the culpable party and assesses Ms. Gentile's $500 award of attorneys' fees, as requested by Ms. Gentile, solely against him.

## IV. Conclusion

Accordingly,

**IT IS ORDERED** that the Plaintiff's **Motion for Sanctions (R. Doc. 73)** is **GRANTED IN PART and DENIED IN PART.**

17

**IT IS GRANTED** to the extent that Plaintiff Rita Gentile's request for an award of $500 in attorneys' fees pursuant to Rule 37(b)(2)(C) is **GRANTED**, and that Randy McKee, counsel for Defendant Orleans Parish Sheriff Susan Hutson, shall provide the $500 payment by no later than ten (10) days of the issuance of this Order.

**IT IS DENIED** to the extent that Plaintiff Rita Gentile's request to prohibit Defendant Orleans Parish Sheriff Susan Hutson "from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence" pursuant to Rule 37(b)(2)(A) is **DENIED, for the reasons provided above.**

**IT IS FURTHER ORDERED** that the Plaintiff's **Motion to Compel (R. Doc. 63)** is **GRANTED IN PART and DENIED IN PART.**

**IT IS GRANTED** to the extent that Defendant Orleans Parish Sheriff Susan Hutson shall provide supplemental responses to Interrogatory Nos. 3, 4, 9, 10, 11, 14, 15, 18, 19, and 20 and Request for Production Nos. 1, 2, 3, 7, 11, 12, 14, 15, 17, 18, and 22 **by no later than fourteen (14) days from the issuance of this Order.**

**IT IS DENIED** to the extent that Plaintiff Rita Gentile's request to compel Defendant Orleans Parish Sheriff Susan Hutson to provide further response to Interrogatory Nos. 6, 8, 17, and 22 and Request for Production Nos. 5, 6, 13, and 21 is **DENIED, for the reasons provided above.**

New Orleans, Louisiana, this 14th day of July 2025.

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**