| | | |
|---|---|---|
| **RITA GENTILE** | * | **CIVIL ACTION** |
| | * | |
| **Plaintiff** | * | **NO. 24-1607 (N)(5)** |
| | * | |
| *Versus* | * | **JUDGE: ANNA ST. JOHN** |
| | * | |
| **NEW ORLEANS CITY PARK** | * | **MAG: KAREN W. ROBY** |
| **IMPROVEMENT ASSN., ET AL.** | * | |
| | * | |
| **Defendants** | * | |

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

**<u>MEMORANDUM IN SUPPORT OF</u>**
**<u>MOTION TO COMPEL DEPOSITION AND ADDITIONAL RESPONSES TO</u>**
**<u>REQUESTS FOR PRODUCTION OF DOCUMENTS</u>**

NOW INTO COURT, through undersigned counsel, comes Plaintiff, Rita Gentile, who respectfully moves this Court, pursuant to Federal Rule of Civil Procedure 37, for an Order compelling Defendants, the City of New Orleans and Superintendent Anne Kirkpatrick (collectively "the City"), to provide full and complete responses to Plaintiff's First Set of Interrogatories and Requests for Production of Documents, and to produce Superintendent Anne Kirkpatrick for deposition.

Plaintiff files this limited Motion to Compel to resolve two discrete, but critical, discovery disputes that the parties have been unable to resolve despite good-faith conferral. First, the City has refused to produce any materials related to the second Public Integrity Bureau ("PIB") investigation into the conduct at issue, relying solely on the assertion that the investigation is "open and active." That position is unsupported by the Federal Rules and improperly withholds relevant evidence concerning officer conduct, policy compliance, and potential sustained violations.

Second, the City has refused to produce Superintendent Anne Kirkpatrick for a deposition based on its unilateral representation that she was not involved in the underlying decision-making.

However, Chief Kirkpatrick has direct involvement in this matter and her signature was required on at least two documents related to the investigation of the alleged misconduct.

I.   **The City must produce the recorded interviews, correspondence, and other documents related to the Second PIB investigation.**

Under Federal Rule of Civil Procedure 26(b)(1), parties may obtain discovery regarding any nonprivileged matter relevant to any party's claim or defense and proportional to the needs of the case. Rule 37(a) authorizes a motion to compel where a party fails to answer an interrogatory or produce documents as requested.

In a strange twist, after the NOPD closed out its first PIB investigation, a second investigation was initiated that pertained to the same misconduct as the first PIB investigation and this lawsuit. First PIB Investigation Report, attached as Exhibit 1  Although the first PIB investigation cleared the two officers and supervisor who arrived on the scene of Dante Gentile's attempted suicide on June 30, 2023 of any wrongdoing, the second PIB investigation (although not completely final) has reached a preliminary conclusion that Lieutenant Corona violated Section 41.5 by not taking Dante Gentile to medical facility for mental health treatment on June 20, 2023. *Deposition of Caronna*, at 91-94 (3/18/2026), attached as Exhibit 2.

The City never disclosed this second PIB investigation. Plaintiff's counsel first learned of the second PIB investigation during Caronna's deposition. Carrona testified that he was surprised by the second investigation and did not understand why the second investigation has lasted so long – almost three years since the incident. Caronna also testified that he sat for a second PIB interview which was recorded. Plaintiff counsel requested the second recording and all underlying documentation in support of the second PIB investigation which preliminarily found that Caronna violated NOPD policy. *3/18/2026 Email Gisleson to Camp*, attached as Exhibit 3.

At the Rule 37.1 conference, counsel for NOPD refused to produce Caronna's second recorded statement as well as any documents used and/or developed by the second PIB investigation for the sole reason that the second PIB investigation had not come to a final conclusion. NOPD counsel represented that the final conclusion would be at a meeting of department heads who would vote on whether to accept the preliminary finding. NOPD counsel represented that no such meeting has been scheduled.

The City is improperly withholding Caronna's second recorded statement and documents related to a second PIB investigation. Plaintiff already requested these documents in its initial discovery requests. On January 14, 2025, Plaintiff propounded her First Set of Interrogatories and Requests for Production seeking information and documents related to the NOPD's encounter with Dante Gentile and the subsequent investigation into that incident. *Plaintiff's First Set of Discovery*, RFP No. 10 (Please produce copies of any and all documents related to any internal investigation or review of the Incident(s) involving the Decedent, including findings and recommendations.)), attached as Exhibit 4. Plaintiff specifically requested all materials related to internal investigations of the incident, including findings, statements, and supporting documentation. *Id.* NOPD, thru the City, served responses on March 20, 2025. *Answers to Plaintiff's First Set of Discovery*, attached as Exhibit 5. Despite those responses, significant categories of responsive information and documents remain withheld, incomplete, or entirely unproduced.

Counsel for Plaintiff conferred in good faith with counsel for the City pursuant to Rule 37.1. Following that conference, the City confirmed that it would not produce Corona's second statement in response to the second PIB investigation or any documents related to the second PIB investigation. Nonetheless, the NOPD admitted: (1) a second investigation exists; (2) the second

investigation involves the same incidents that are the subject of this litigation; (3) the second investigation included a preliminary finding that Corona violated NOPD policy by not taking Plaintiff to a medical facility for mental health treatment; (4) Corona (and perhaps others) provided a recorded statement; and (5) other documents likely exist unique to the second investigation, such as written communications. Despite these admissions, the NOPD has refused to produce any materials, asserting only that the investigation is "open and active" and that production would be "premature." The NOPD has not listed any of these items on a privilege log.

That position is legally insufficient. There is no categorical privilege shielding internal affairs or investigative materials from discovery merely because an investigation is ongoing. NOPD has not asserted a specific privilege with a supporting log, demonstrated any particularized harm from production, or sought a protective order. Instead, the NOPD has imposed a unilateral refusal to produce plainly relevant materials concerning officer conduct, policy compliance, and potential deviations from required procedures. These materials go directly to the claims at issue and must be produced. Documents similar to those identified in the first PIB Report likely were created as a result of the second PIB investigation. *See Exhibit to First PIB Investigation Report*, attached as Exhibit 6.

## II. Superintendent Anne Kirkpatrick is a material fact witness who should be ordered to sit for a deposition.

NOPD has likewise improperly refused to produce Superintendent Anne Kirkpatrick for a deposition. Plaintiff requested the deposition of individuals involved in the investigative and disciplinary process, including those with authority over, or involvement in, the disposition of the underlying conduct.

Superintendent Kirkpatrick's name and signature are included on two of the most important documents in this litigation. The first document is a September 19, 2023 Interoffice Memorandum

that discusses the first PIB investigation, the findings, and the evidence. *Interoffice Memorandum*, at 1 (09/19/23), attached as Exhibit 1. The Memorandum ultimately concludes that two of the responding officers and Caronna did not violate NOPD procedure for the events that are the subject of this lawsuit. *Id.* at 1. The Memorandum is addressed to only one person – Superintendent Kirkpatrick. *Id.* The Memorandum is from (and presumably written by) Caronna (the subject of both PIB investigations) and Lieutenant Octavio Baldassaro. *Id.*

At the end of the Interoffice Memorandum is a line for Chief Kirkpatrick's signature under the option of "CONCUR/DOES NOT CONCUR". *Id.* at 15. The word "CONCUR" is circled and a line is drawn through the phrase "DOES NOT CONCUR". Above her signature line, a different person signed for her – Deputy Superintendent Keith Sanchez. He also signed his own name.

At his deposition, Deputy Sanchez testified that he believed he had the authority to sign for Superintendent Kirkpatrick back then pursuant to an "informal" policy and that the same policy (allowing him to sign for the Chief) no longer exists. *Sanchez Deposition*, at 31-34, attached as Exhibit 7. He testified that he did not know whether the Chief knew about the underlying allegations but that she was the correct person to ask:

QUESTION: The best person to ask about what Anne Kirkpatrick knows, being a defendant in this case, would be to ask Anne Kirkpatrick herself; correct?

SANCHEZ: Yes.

*Sanchez Deposition*, at 38.

The second important document is also only addressed to Superintendent Kirkpatrick. This document is also an Interoffice Memorandum with the subject line reading "Memo in Support of Disposition". *Interoffice Correspondence*, at 1 (09/28/23), attached as Exhibit 9. The purpose of this document is clearly to "circle the wagons" from the inevitable litigation. The document

opens with a declaration that suggests a cover-up:

> I am writing this cover letter only to reinforce the decision made by the investigator, Lt. Baldassaro. I feel this is needed because of the hindsight which might be applied to this case. Applying facts to a case which occurred afterward isn't fair to the accused officers <u>even if those new facts show that, perhaps, another decision in the earlier incident may have changed the outcome of the second incident</u>.

*Id.* at 1 (emphasis supplied).

Hoping to pull Superintendent Kirkpatrick into the earlier memo co-written by the subject of the investigation Caronna, the Memorandum all but pleads for everyone to come to the same conclusion:

> While we all now have knowledge of the following incident, wherein <u>the individual most likely took his own life</u> (pending the Coroner's decision), <u>it is regrettable that a different action wasn't taken the previous day for the incident being investigated</u>. The policy was not violated, but furthermore, as Lt. Caronna's supervisor for all of 2022, I know him to be a person who never avoids work and as a person who makes sound decisions. He has 33 years of experience and took precautions on the scene by calling a negotiator. In the end, <u>he and all those on the scene did not feel that this individual was in a state of mind requiring transportation to a hospital for an evaluation</u>.

*Id.* at 1 (emphasis supplied).

Again, as in the first memorandum, Sanchez signed for Kirkpatrick. Again, Sanchez testified that Kirkpatrick was the right person to ask about what she knows about a memorandum in which she is supposedly the only recipient. *Sanchez Deposition*, at 38. What Kirkpatrick knows, when she knew it, and what she did with this information is critically important to this case. These issues bear upon the ultimate issues in this case -- whether the NOPD acted with deliberate indifference on June 30, 2023 when Dante was threatening to jump off the on-ramp of I-10, whether NOPD's policies and practices for how to treat those who are suffering from a mental health crisis were adequate (and/or were violated), whether the NOPD engaged in a cover-up in

the first PIB investigation and subsequent memoranda, and whether Kirkpatrick was a part of that cover-up.

Plaintiff is entitled to test the scope of the Chief's involvement, knowledge, and oversight, including:

- whether decision-making authority was exercised or delegated;

- whether the NOPD acted with deliberate indifference;

- the extent of her knowledge of the incident and resulting investigations;

- the policies, practices, and supervisory structures governing the conduct at issue;

- whether the NOPD engaged in a cover-up; and

- whether she was part of that cover-up.

Courts do not permit a party to avoid deposition discovery based on its own characterization of a witness's lack of involvement. Where, as here, the Chief of Police is the ultimate policymaker and may have direct or delegated authority over the decisions at issue, her testimony is plainly relevant and proportional to the needs of the case. The City has not sought a protective order, has not established undue burden, and has not demonstrated that the information sought can be obtained through less intrusive means.

WHEREFORE, Plaintiff respectfully prays that this Honorable Court grant this Motion to Compel and order the City to:

1. Produce Caronna's second recorded statement and all documents and materials related to the second Public Integrity Bureau investigation, including but not limited to statements, findings, and supporting investigative materials;

2. Produce Superintendent Anne Kirkpatrick for deposition within a reasonable time; and

3. Grant such other relief as the Court deems just and proper.

RESPECTFULLY SUBMITTED,

s/Soren E. Gisleson
SOREN E. GISLESON La Bar No. 26302
HERMAN, KATZ, GISLESON & CAIN
909 Poydras Street, Suite 1860
New Orleans, La 70113
Tel: (504) 581-4892
Fax: (504) 561-6024
soren@hkgclaw.com

-AND-

RICHARD C. TRAHANT (#22653) T.A.
ATTORNEY AT LAW
2908 Hessmer Ave.
Metairie, Louisiana 70002
Tel:(504) 780-9891
Fax:(504) 780-7741
trahant@trahantlawoffice.com

## **CERTIFICATE OF SERVICE**

I hereby certify that the foregoing has been served to all known counsel of record on this

8th day of May, 2026.

/s Soren E. Gisleson